# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JASON T. BLOWERS,

                                        Plaintiff,

    vs.

NY STATE POLICE TROOPER
J.T. NIGRO, JR. in his individual                        6:16-CV-332
and official capacity as an employee                  (LEK/ATB)
of the New York State Police; and
BCI INVESTIGATOR JOHN WARNER,
in his individual and official capacity as an
employee of the New York State Police,

                                       Defendants.

JASON T. BLOWERS, Plaintiff pro se

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Jason T. Blowers. (Dkt. No. 1) Plaintiff Blowers has also filed an application to proceed in forma pauperis ("IFP"). (Dkt. No. 2). For the following reasons, this court will conditionally grant plaintiff's IFP application, but will recommend dismissal of the complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## I.    <u>IFP Application</u>

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). The court finds for purposes of this recommendation, that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to

proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl.*

*Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Complaint

Plaintiff alleges that he was subject to an illegal search and seizure by the defendants on March 21, 2013. In addition, the complaint contains many "background" facts that this court will summarize in an effort to liberally construe plaintiff's allegations.[1] Plaintiff begins his complaint with a discussion of the romantic relationship that he had with Serena Brower. (Complaint ("Compl.") ¶ 14). Plaintiff and Ms. Brower had a child, and the three lived together from 2009 until 2012. (Compl. ¶¶ 15, 17). However, beginning in April of 2012, Ms. Brower began leaving plaintiff's home for periods of time, taking their child with her, and refusing to disclose their location to plaintiff. (Compl. ¶¶ 18, 20, 21). On May 3, 2012, Ms. Brower returned to plaintiff's house without their child and refused to tell plaintiff the whereabouts of the child. (Compl. ¶ 20, 21).

The next part of the complaint is unclear,[2] but it appears that 911 was called, and New York State Trooper PA Darling and Deputy Sheriff Dunn responded and spoke to

---

[1] Plaintiff is pro se, and the court must interpret plaintiff's complaint liberally. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008). The court considers all possible grounds for relief that plaintiff could be raising. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

[2] It is unclear to the court because paragraph 21 states that "plaintiff called 911 for assistance," but paragraph 52 states that on August 8, 2012, Ms. Brower "again" called 911. (Compl. ¶¶ 21, 52). Prior to August 8, 2012, the only other time that the plaintiff indicates that 911 was called, plaintiff claims that he called 911. Thus, it is unclear how on August 8, Ms. Brower called 911 "again." This confusion is not relevant to this court's recommendation, but it does make the facts even less clear.

3

plaintiff and Ms. Brower together on plaintiff's porch. (Compl. ¶¶ 22-23). Plaintiff states that Trooper Darling and Deputy Sheriff Dunn escorted Ms. Brower into plaintiff's house to retrieve her belongings, while plaintiff remained on the porch. (Compl. ¶¶ 24, 25). Plaintiff states that, during the time the officers were in his home with Ms. Brower, plaintiff walked into the house to use the bathroom and noticed that Trooper Darling had a prescription medication bottle in his "possession," but that when plaintiff walked in, Trooper Darling put the bottle down. (Compl. ¶¶ 26-28). Plaintiff alleges that the prescription medication bottle was not in his house prior to the officers entering his home. (Compl. ¶ 29).

Plaintiff claims that Trooper Darling told plaintiff that his presence in the house made the trooper nervous, so the officer walked plaintiff out of the house, handcuffed him to the front bumper of the trooper's car, and went back into the house. (Compl. ¶¶ 30-32). Plaintiff alleges that shortly thereafter, Trooper Darling came out of plaintiff's house holding a red container, which the trooper stated contained marijuana. (Compl. ¶ 33). Plaintiff denied knowing anything about the red container and states that he had never seen it prior to that day. Notwithstanding this denial, plaintiff states that he was taken to the Mayfield Trooper Barracks, leaving Ms. Brower in plaintiff's home alone. (Compl. ¶¶ 34-36, 38). When they arrived at the Mayfield Trooper Barracks, plaintiff alleges that he was asked to be a drug informant, but he turned down the offer, even after he was told that if he gave information to the State Police, "'all of this will disappear.'" (Compl. ¶¶ 39-41). After plaintiff refused to be an informant, he was released, but told to "walk home," a distance of more than ten miles. (Compl. ¶ 42).

Plaintiff states that when he got home, he saw that the prescription medicine bottle was still in his house. (Compl. ¶ 43). Plaintiff alleges that he "bagged" the bottle for "future identification." (Compl. ¶ 44). Plaintiff claims that as a result of the same encounter, Trooper Darling contacted the Fulton County Child Protective Service ("CPS") and filed a report, alleging that plaintiff mistreated his child, even though the child was not in the home at the time that the above incident took place. (Compl. ¶¶ 45-46). The subsequent CPS investigation concluded that the complaint was "unfounded." (Compl. ¶ 47).

Plaintiff claims that in June of 2012, Ms. Brower brought a family court proceeding, "with the assistance of Trooper Dunn." to establish custody and "parenting time" between Brower and plaintiff. (Compl. ¶ 48). Ms. Brower told plaintiff that she was working with the New York State Police as an informant in "drug related cases." (Compl. ¶ 49). Plaintiff alleges that in June of 2012, Ms. Brower returned to plaintiff's home "on and off for the month," but that in the first week of August, plaintiff told Ms. Brower that she was no longer welcome in his home. (Compl. ¶ 50-51). Plaintiff states that on August 8, 2012, Ms. Brower "again" called 911, and Trooper Dennie responded to the call. (Compl. ¶ 52). Plaintiff claims that Ms. Brower asked that plaintiff be arrested for harassment, but that Trooper Dennie did not find that the conversation[3] between plaintiff and Ms. Brower rose to the level of harassment. (Compl. ¶¶ 53-54).

However, Ms. Brower filed a "citizen's arrest," charging plaintiff with

---

[3] This court can only assume that the "conversation" to which plaintiff is referring is his statement to Ms. Brower that she was no longer welcome in his home.

harassment, and requesting a temporary restraining order.[4] (Compl. ¶ 55). Plaintiff alleges that Ms. Brower left plaintiff's home the following day, taking their child with her. (Compl. ¶ 56). Plaintiff claims that he and Ms. Brower were "in and out of Family court during the next four months," but apparently came to an agreement for a "fifty/fifty custody arrangement." (Compl. ¶¶ 57-58). Ms. Brower returned to plaintiff's residence in October of 2012, but left again in January of 2013 with the child, but without leaving a forwarding address. (Compl. ¶¶ 59-60).

Plaintiff claims that three weeks later, he was reunited with his child with the help of Fulton County CPS. (Compl. ¶ 61). Plaintiff states that on January 22, 2013, Ms. Brower dropped the child off at the plaintiff's home, even though it was not his court-identified day, and he was not supposed to have the child until January 27, 2013, but plaintiff was happy to have the child with him. (Compl. ¶¶ 63-64). However, on January 26, 2013, plaintiff states that he was served with a "restraining order," even though "nothing at all" had happened between him, the child, and Ms. Brower. (Compl. ¶ 65). Plaintiff states that in February of 2013, he finally found out where Ms. Brower was living. (Compl. ¶ 66). The defendants knew her address because she was still acting as a State Police informant "for what plaintiff believes [were] drug enforcement cases." (Compl. ¶¶ 66-67).

Plaintiff alleges that "immediately prior to March 21, 2013," Ashley Garcia, one of Ms. Brower's "associates" arrived at plaintiff's home, demanding that she be

---

[4] This court is attempting to liberally interpret this unclear paragraph in the complaint. Plaintiff does not state where Ms. Brower filed her "citizen's arrest," and from whom she requested a temporary restraining order.

allowed to come in and retrieve Ms. Brower's things. (Compl. ¶¶ 68-69). Plaintiff requested a list of the items that Ms. Brower wanted, and agreed to provide the items if he was given such a list. (Compl. ¶¶ 70-71). Ms. Garcia then called the State Police for "assistance," but Trooper Klingbial agreed with plaintiff and told Ms. Garcia that Brower should provide plaintiff with a list of the things that she wanted, after which both Trooper Klingbial and Ms. Garcia left the premises. (Compl. ¶¶ 72-73). Ms. Brower never gave plaintiff the list of items that she wished to obtain from his home.

On March 21, 2013, plaintiff states that he was meeting with his attorney and the Fulton County District Attorney in connection with the harassment and marijuana charges. (Compl. ¶ 76). Defendants New York State Trooper J.T. Nigro ("Nigro"), New York State Police BCI Investigator John Wagner ("Wagner") and Ms. Brower knew about the plaintiff's meeting. (Compl. ¶ 77). Defendant Wagner called Ms. Brower and told her that the "Troopers" would escort her to plaintiff's residence so that she could remove her possessions from his property. (Compl. ¶ 78).

Plaintiff claims that Ms. Brower and three friends and the defendants entered his home without plaintiff's permission and without an "order of the court." (Compl. ¶ 79-80). Ms. Brower and her friends began gathering her property as well as some of plaintiff's property, during which time plaintiff claims that they "witnessed the Defendants searching Plaintiff's bedroom drawers, without a warrant or permission." (Compl. ¶ 80-81). Plaintiff then states that the defendants left the premises and instructed the women to call them if plaintiff should return before they left. (Compl. ¶ 82).

7

Plaintiff claims that, as he left his meeting, his attorney told him "specifically," not to let anyone into his home without a warrant. (Compl. ¶ 84). When plaintiff got home, Ms. Brower and her friends were still there, and plaintiff states that he observed them removing his property and his child from the home. (Compl. ¶ 84). Ms. Brower called the defendants because she was told to do so if plaintiff got home before she and her friends left. (Compl. ¶ 85). Defendant Nigro responded to the call, and plaintiff asked defendant Nigro for the warrant or the "authority" for defendants and Brower to gain access to plaintiff's house. (Compl. ¶ 87).

Plaintiff states that defendant Nigro went back to his car and "had multiple conversations on his cell phone." (Compl. ¶ 88). At one point, defendant Nigro "put Defendant Wagner on the phone with the Plaintiff to respond to Plaintiff's requests for information." (Compl. ¶ 89). Plaintiff states that defendant Wagner told plaintiff that his belongings would be returned to the house, and that there had been no warrants issued. (Compl. ¶ 90). Defendant Nigro then told Ms. Brower to return the possessions that she and her friends had removed from the house. (Compl. ¶ 91). Plaintiff states that he made a video tape of everything that happened after he got home and until defendant Nigro and Ms. Brower left the premises. (Compl. ¶ 92).

Plaintiff states that "at no time herein, did the Defendants have a warrant, cause, let alone probable cause or reasonable suspicion to search Plaintiff's residence." (Compl. ¶ 93). Plaintiff "believes" that defendants were searching for the prescription drug bottle that was left behind on May 3, 2012. (Compl. ¶ 94). Plaintiff states that he called the Troop Barracks to file a complaint after Ms. Brower and defendants left.

Defendant Wagner refused to take the complaint, but plaintiff was ultimately told[5] that someone would come to his house to discuss the matter. (Compl. ¶¶ 95-101).

On March 22, 2013, Trooper Vincent arrived at plaintiff's home to discuss the incident. Plaintiff recited "what he knew of the events of March 21, 2013" and showed Trooper Vincent the videos that plaintiff took. (Compl. ¶¶ 103-104). Trooper Vincent told plaintiff that he would return to the Barracks and "'talk to people'" to see what could be done about the situation, and plaintiff asked Trooper Vincent for a written report. (Compl. ¶¶ 105-106). However, "to date" plaintiff has not received any report, even though he has tried to follow up many times. (Compl. ¶ 107).

Plaintiff states that on March 24, 2013, he called the "State Troopers in Albany" and spoke with Trooper Appelton, who was identified as being with "Internal Affairs." (Compl. ¶ 109). Plaintiff claims that no investigation has taken place, and no reports have been written about the incident. (Compl. ¶¶ 110-11). Plaintiff claims that the "increased Trooper presence" in plaintiff's "family affairs" began after Ms. Brower became an informant for the State Police and after the couple went to Family Court to arrange for custody of their child. (Compl. ¶112). Plaintiff states that the Family Court action "has had a number of unusual turns" because four judges "across three counties have recused themselves for reasons unknown to the Plaintiff." (Compl. ¶ 114). Plaintiff states that, in addition to the multiple recusals and "venue," the New York State Police have been "unusually engaged with the family." (Compl. ¶ 115).

---

[5] It is unclear who made this statement to plaintiff because the reference is made in a separate paragraph that does not identify the speaker. (Compl. ¶ 101). The court could only assume that it was defendant Wagner who made this statement to plaintiff.

9

Plaintiff states that Ms. Brower has changed addresses twenty-seven times since 2012, that many of her living conditions have been "less than optimal," and that their child has been "in harms way" when living with her mother. (Compl. ¶¶ 116-18). In contrast, plaintiff has lived at the same address for over seven and one half years and has provided a "safe and consistent" home for their child. (Compl. ¶ 119). While there have been two reports to CPS against plaintiff, they were both "unfounded" and "closed" accordingly. (Compl. ¶ 121). The marijuana charge was adjourned in contemplation of dismissal. (Compl. ¶ 122).

Plaintiff's complaint may be read to raise two claims: (1) the defendants' conduct in entering plaintiff's residence without a warrant, knowing he was not home, and illegally searching his home violated plaintiff's rights under the Fourth and Fourteenth Amendments and (2) the failure to investigate plaintiff's claim violated plaintiff's claims under the Fourth and Fourteenth Amendments. (Compl. ¶¶ 123-27). Plaintiff claims that as a result of defendants' actions, he has suffered "physical, mental and emotional injury," including pain, mental anguish, suffering, humiliation, and embarrassment. (Compl. ¶¶ 129-30). Plaintiff seeks declaratory, injunctive, and monetary relief. (Compl. at p.13).

## I. Eleventh Amendment

### A. Legal Standards

The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). An action against state officers in their official capacities, or an action against an

agency of the state, is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions); *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (agencies of the state).

### B. Application

Plaintiff names the defendants in their individual and official capacities. The Eleventh Amendment prevents a suit against these defendants in their official capacities. Although there is an exception for plaintiff's seeking prospective injunctive relief, to the extent that plaintiff seeks damages from the defendants in their "official capacities, the action must be dismissed with prejudice.

## II. Search and Seizure

### A. Legal Standards

"The Fourth Amendment protects individuals in their homes against 'unreasonable searches and seizures.'" *Lautman v. Village of Saugerties, N.Y.*, No. 1:13-CV-264, 2014 WL 1653189, at *5 (N.D.N.Y. Apr. 23, 2014) (quoting U.S. Const. amend. IV). Warrantless searches are "'per se unreasonable . . . subject to only a few specifically established and well-delineated exceptions.'" *Id.* (quoting *United States v. Elliot*, 50 F.3d 180, 185 (2d Cir. 1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The Second Circuit has held that although a warrantless search is per se unreasonable, the operation of the presumption cannot shift the burden in a civil action to the defendant to prove that the official action was reasonable. *Id.* (quoting *Ruggiero v. Krzeminski*, 938 F.2d 558, 563 (2d Cir. 1991) (citations omitted)). The

11

presumption merely places the burden on defendants to produce evidence of consent or other exception to the warrant requirement, while the ultimate risk of non-persuation remains with the plaintiff in accordance with the "established principles governing civil trials." *Id.*

**B.     Application**

In this case, the court finds that plaintiff's allegations regarding the allegedly "illegal search and seizure" are completely conclusory. The only facts that plaintiff alleges against the two defendants are that they escorted Ms. Brower to plaintiff's house, and that Ms. Brower and her friends "witnessed" the two defendants going through plaintiff's drawers. Plaintiff does not allege that the group broke into his home, so presumably Ms. Brower was able to gain access to the home. Plaintiff was not home, and he does not allege that anything was found as a result of the alleged search or that anything was even disturbed. The defendants went to plaintiff's home to accompany Ms. Brower to retrieve what she claimed were her belongings, not to "search" plaintiff's home for a medicine bottle that had been left there by other troopers almost a year prior to the incident.[6]

When plaintiff arrived, neither defendant was at plaintiff's house, and when defendant Nigro came back to plaintiff's house, he called defendant Warner and ultimately instructed Ms. Brower to return the belongings that she and her friends took

---

[6] This is speculation by plaintiff that is completely unfounded and not supported by any of his own factual statements.

12

from the house.[7] Plaintiff fails to support his claims of an "unreasonable" search with any factual allegations, other than the hearsay statement that the defendants looked through his bedroom drawers and left the house. Plaintiff has failed to state a claim for unreasonable search and seizure.

## III. **Right to Investigation**

### A. **Legal Standards**

Plaintiff has no constitutional right to an investigation of any sort by government officials. *See Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008); *Lewis v. Gallivan*, 315 F. Supp. 2d 313, 317 (W.D.N.Y. 2004) (citing cases). In order for a constitutional violation to have occurred, the investigation itself must have resulted in the deprivation of a constitutional right. *Faison v. Hash*, 03-CV-6475P, 2004 WL 944523, at *6 (W.D.N.Y. April 23, 2004) (citation omitted).

### B. **Application**

In this case, plaintiff alleges that he called defendant Wagner to complain about the alleged incident, but he refused to take plaintiff's complaint. (Compl. ¶ 100). Plaintiff then alleges that he spoke to Trooper Vincent, and then later to an individual from Internal Affairs, neither of whom are named as defendants. The fact that they refused to take his complaint, did not investigate properly, did not issue a written report, or even ignored him does not rise to the level of a constitutional violation. Plaintiff essentially claims that he did not like the way the defendants handled the

---

[7] The court must note that the plaintiff spends most of the complaint attempting to discredit Ms. Brower and her reliability.

"investigation" because they did not follow up after they spoke to him and did not send plaintiff the requested "written report." Plaintiff has no constitutional right to any such action. Thus, any failure to investigate may be dismissed with prejudice.

## IV. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). With respect to the official capacity claims and the claim that plaintiff had the right to an investigation, the court recommends dismissing with prejudice because any attempt to amend this complaint would be futile. Although the court finds, even with respect to the search and seizure claim, there is little chance that the plaintiff will be able to amend this complaint to state a claim, in an abundance of caution, the court will recommend dismissing the claim without prejudice to plaintiff attempting to amend his complaint.[8]

---

[8] Without making any specific findings on the issue, the court would also note that the search and seizure incident in this case took place on March 21, 2010. Plaintiff did not file this action until March 22, 2016. It is arguable that the search and seizure claim would be barred by the three-year statute of limitations in addition to its lack of merit. The statute of limitations for section 1983 actions is the "general" statute for personal injury actions in the state in which the cause of action arose. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In New York, it is well settled that the applicable statute of limitations is three years under N.Y. C.P.L.R. § 214(5). *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). The statute of limitations begins to run on the date that plaintiff's claim accrued, which is the date that plaintiff has a complete and present cause of action and can file suit and obtain relief. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Without considering whether plaintiff would be entitled to equitable tolling, he has filed his action for illegal search and seizure one day late. However, this court will not consider whether equitable tolling would save his claim or recommend dismissal on the basis of statute of limitations because plaintiff does not state a claim in any event.

If the district court adopts this recommendation, plaintiff should be given forty-five (45) days from the date of the district court's order within which to file a proposed amended complaint *only with respect to his search and seizure claim*. If plaintiff fails to file such a proposed amendment or fails to request an appropriate extension of time to so within the forty-five (45) day period, the case may be dismissed in its entirety *with prejudice*. If plaintiff files a proposed amended complaint, the court may refer the case to me for review of the sufficiency of the proposed amended complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING**, and it is

**RECOMMENDED**, that this action be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii), based upon Eleventh Amendment immunity as to any claims against defendants in their Official Capacities, and for failure to state a claim with respect to plaintiff's claim that he was denied a proper investigation of his claims against the officers, and it is

**RECOMMENDED**, that this action be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim with respect to plaintiff's Fourth Amendment search and seizure claim, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, plaintiff be given forty-five (45) days within which to file a proposed amended complaint only with respect to his search and seizure claim, and it is

**RECOMMENDED**, that if plaintiff fails to file a proposed amended

complaint or request a proper extension of time to do so within the forty-five (45) days, the court order dismissal of this entire complaint **WITH PREJUDICE**, and it is

**RECOMMENDED**, that if plaintiff files a proposed amended complaint within the time allotted or within any time extension granted by the court, the case be referred to me for review of the proposed amended complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 28, 2016

*[signature]*

Hon. Andrew T. Baxter
U.S. Magistrate Judge